Brett Schreiber (SBN 239707)
bschreiber@singletonschreiber.com
Meagan Verschueren (SBN 313117)
mverschueren@singletonschreiber.com
Katie Llamas (SBN 303983)
kllamas@singletonschreiber.com
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Tel. (619) 771-3473

Attorneys for Plaintiff JANE DOE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE, an individual,<br><br>Plaintiff,<br>v.<br><br>G6 HOSPITALITY, L.L.C.; G6 HOSPITALITY PROPERTY, L.L.C.; G6 HOSPITALITY FRANCHISING, L.L.C.; MOTEL 6 OPERATING L.P.; WYNDHAM HOTEL & RESORTS, INC.; OAKLAND HOTEL, LLC; GLASJAR PROPERTY, LLC; D VAL HOTEL, LLC; KRISHNA HOSPTIALITY, LLC; BJH INVESTMENTS, LLC; PARIJAT INVESTMENTS, LLC and ROES 1 through 50.<br><br>Defendants. | Case No.: 3:26-cv-03907-JD<br><br>Unlimited Jurisdiction<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJURIES**<br><br>**JURY TRIAL DEMANDED**<br><br>**Damages in excess of $1,000,000** |

COMES NOW the Plaintiff JANE DOE, by and through the undersigned counsel, and respectfully submits this First Amended Complaint for damages and makes the following averments.

## INTRODUCTION

1. For decades, sex trafficking ventures have blatantly operated in and out of hotels throughout the United States.

2. For years, hotel operators and major hotel brands have made public claims that they are combatting human trafficking, while at the same time permitting their budget properties to serve as sites where sex trafficking is most prevalent and profitable. Despite awareness campaigns and public statements, sex trafficking continues to thrive in the hotel and hospitality industry.

3. Major hotel brands, including Motel 6 and Wyndham, have made false public claims that they are "combatting human trafficking," but in stark contrast, they continue to direct their hotels to be built and/or branded where they know sex trafficking is most prevalent to profit from trafficker's room rentals and the trafficking crimes that they allow to be perpetrated on their properties. Despite major brands' public statements acknowledging the existential crisis, human trafficking continues to be most prevalent in the hotel and hospitality industry.

4. Criminals conduct their misconduct openly on hotel and motel properties throughout California, and profit from providing harbor for the underlying assaults. The hotel and hospitality industry has continued to create and expand the environment for traffickers to harbor victims, neglecting to take reasonable steps to prevent such criminal misconduct, instead choosing to earn a profit at the expense of human life, human rights, and human dignity.

5. Public appearances and sponsorships do not excuse corporations and individuals that have financially benefited from sex trafficking. In fact, it reveals corporate knowledge of the use of their properties and technology as hubs for human trafficking. The hotel industry has historically and presently provided the environment, place, means, and support for the human trafficking industry to become the second largest profitable criminal



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

activity in the United States.[1]

6. The subject hotel properties—budget and mid-scale lodging establishments concentrated in Vallejo, California and the surrounding bay area—were not ordinary hotels. Each was a property that functioned, by all observable evidence, as a recurring hub for drug activity, prostitution, and human trafficking. Their operators knew. Their management knew. Their staff, to the extent any were present, knew. Yet the hotels continued to operate, continued to rent rooms, and continued to profit as women and girls were trafficked within their walls. The City of Vallejo and Oakland and law enforcement agencies generated years of calls for service documenting crime, disorder, and trafficking indicators at these properties—records available to any diligent operator and which put the Hotel Defendants on actual, constructive, and red-flag notice of the exploitation occurring at their locations.

7. Vallejo is a documented high-demand area for sex trafficking. The Vallejo Police Department and Solano County law enforcement agencies have publicly documented the arrest of human trafficking suspects and the rescue of minor victims in the immediate vicinity of the subject hotel properties.

8. As the trafficking industry grows, so have Defendants and their profits through the expansion of their properties, rooms rented, and goods sold for this explicit and apparent purpose.

9. Defendant brand companies having been sued several times for their participation in sex trafficking ventures. Despite numerous survivors testifying that Defendants were all-knowing, Defendants continue to claim the sex trafficking at their properties is invisible — that they did not see it, did not know, and could not have known. In reality, it was not invisible at its other properties around the country and it was not invisible at the

[1] https://www.mbfpreventioneducation.org/human-trafficking-is-now-the-second-most-profitable-criminal-activity-in-the-united-states/



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

subject properties. It was seen in the endless stream of men marching to and from the same room; and criminal traffickers loitering and watching. It was seen through the constant parade of unhealthy, scared, bruised and battered women brought to and from the property; and the bloody sheets and excess condoms and drug paraphernalia. It was heard in the cries, the arguments, the doors slamming at all hours. It was felt in the fear that hung in those hallways and back corners. And it was ignored.

10. Sex trafficking does not happen in a vacuum. It happens in a room. A room assigned at a front desk. A room accessed by a key card. A room captured on security cameras and monitored by staff. A room cleaned, re-rented, and profited from — over and over again. It moves through lobbies and parking lots, past employees and managers, before it is sealed behind four thin walls. This crime needed a venue. Defendants willingly provided it.

11. JANE DOE files this civil lawsuit to hold Defendants accountable for the harm they caused her when they gave her traffickers a venue to traffic her in exchange for money. Defendants each facilitated and participated in trafficking her for sex at hotels and motels they owned, operated, maintained, managed, supervised and controlled, including the at the following properties:

(a) Motel 6, 1455 Enterprise St, Vallejo, CA

(b) Motel 6, 1801 Embarcadero, Oakland, CA

(c) Super 8, 2070 Solano Ave, Vallejo, CA.

**PARTIES**

12. JANE DOE is a natural person and an adult woman. JANE DOE is a survivor of sex trafficking. From approximately 2011 through 2023, when she was between the ages of approximately twenty-one and thirty-three years old, she was harbored and forced to engage in commercial sex acts at multiple hotel and motel properties in Vallejo and Oakland, California and the surrounding areas, including the subject hotel properties identified in this Complaint. JANE DOE was harbored, abused, and forced to engage in



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

commercial sex acts for the benefit of her criminal traffickers and Defendants at Defendants' hotel and motel properties.

a. Due to the sensitive, private, and potentially retaliatory nature of these allegations, this complaint identifies JANE DOE by pseudonym and general location only. Plaintiff JANE DOE will move the court to proceed under a pseudonym in all filings, all public Court proceedings, and to limit the disclosure of information about Plaintiff JANE DOE's true identity to protect Plaintiff and her identity.

b. Generally, pleadings must state the name of all parties.[2] However, there are exceptions when the issues involved may result in retaliation or harm to the Plaintiff JANE DOE.[3] For good cause, the Court may issue an order to protect a party or person from undue harms and burdens.

c. To maintain her privacy and safety, Plaintiff JANE DOE should not be compelled to disclose her identity. Plaintiff JANE DOE's privacy interest substantially outweighs the customary practice of judicial openness.[4] Plaintiff JANE DOE escaped her traffickers and would be in danger of being forced back into trafficking, physically harmed or killed should her traffickers learn information about her through publicly filed documents in this action and learn that she is speaking out. Moreover, Defendants will not be prejudiced. Plaintiff JANE DOE will agree to reveal her identity to Defendants for the limited purpose of investigating Plaintiff JANE DOE's claims once the parties have entered into a protective order. Plaintiff JANE

---

[2] Fed. R. Civ. P. 10(a).

[3] See Doe v. Blue Cross and Blue Shield United of Wis., 112 F.3d 869, 872 (7th Cir. 1997); see also Doe v. Penzato, 2011 U.S. Dist. LEXIS 51681, *6-9 (N.D. Cal. May 13, 2011); Roe v. St. Louis Univ., 2009 U.S. Dist. LEXIS 27716, *13 (E.D. Mo. Apr. 2, 2009).

[4] See WASHINGTON cases *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (internal citation and quotations omitted).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

DOE simply seeks redaction of Plaintiff JANE DOE's personally identifying information from the public docket and assurances that Defendants will not use or publish Plaintiff JANE DOE's identities in a manner that will compromise her personal life, future safety, or employment prospects, as well as her rights to privacy after being a victim of multiple sexual abuses, sexual assault and sex trafficking.

13. Defendant BJH INVESTMENTS, LLC is a California limited liability company. At all relevant times from approximately 2011 through 2022, BJH Investments, LLC owned, operated, managed, and/or controlled the Super 8 by Wyndham Vallejo/Napa Valley located at 2070 Solano Avenue, Vallejo, California 94590 (the "Super 8"). BJH INVESTMENTS, LLC's principal place of business is Vallejo, California 94590.

14. Defendant PARIJAT INVESTMENTS, LLC is a California limited liability company. At all relevant times from approximately 2022-2024, PARIJAT INVESTMENTS, LLC owned, operated, managed, and/or controlled the Super 8 by Wyndham Vallejo/Napa Valley located at 2070 Solano Avenue, Vallejo, California 94590 (the "Super 8"). PARIJAT INVESTMENTS, LLC's principal place of business is California.

15. Defendants BJH INVESTMENTS, LLC and PARIJAT INVESTMENTS, LLC will collectively be referred to as "Super 8 Location Defendants"

16. Defendant WYNDHAM HOTEL & RESORTS, INC. ("WYNDHAM") is a corporation that brands, instructs, controls, and contracts with about 9,000 branded properties for profit, including Super 8 and specifically with PARIJAT INVESTMENTS, LLC and BJH INVESTMENTS, LLC and the subject Super 8 where JANE DOE was trafficked. It is a Delaware corporation with its principal place of business in Parsippany, State of New Jersey and can be served through its registered agent in Cincinnati, Ohio.

17. WYNDHAM is the successor to Wyndham Worldwide Corporation and is liable



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

under successor liability for the wrongful acts of Wyndham Worldwide Corp., so "Wyndham," as referred to herein, also includes Wyndham Worldwide Corp.

18. WYNDHAM shares, and at all relevant times shared, profits with franchisees and directly profited from the room rentals and goods sold for sex trafficking at its branded properties, including the subject Super 8 location named herein. It has known for decades that sex trafficking was occurring at its properties and branded properties, but did not and has not taken any reasonable action to prevent it at its branded properties, including the subject Super 8.

19. WYNDHAM owned and/or had an ownership interest in, inspected, branded, supervised, managed, controlled, and operated the subject Super 8 located at 2070 Solano Avenue, Vallejo, CA 94590 where JANE DOE was trafficked.

20. Defendant GLASJAR PROPERTY, LLC is a Delaware limited liability company. At all relevant times from approximately before 2011 through 2012, GLASJAR PROPERTY, LLC, owned, operated, managed, and/or controlled the Motel 6 located at 1455 Enterprise Street, Vallejo, California.

21. Defendant D VAL HOTEL, LLC is a California limited liability company. At all times relevant from approximately 2019 through 2021, D VAL HOTEL LLC, owned, operated, managed, and/or controlled the Motel 6 located at 1455 Enterprise Street, Vallejo, California.

22. Defendant KRISHNA HOSPITALITY LLC, is a California limited liability company. At all times relevant from approximately 2022 through 2023, KRISHNA HOSPITALITY, LLC owned, operated, managed, and/or controlled the Motel 6 located at 1455 Enterprise Street, Vallejo, California.

23. Defendant OAKLAND HOTEL, LLC is a California limited liability company. At all times relevant from approximately 2021 through 2023, OAKLAND HOTEL, LLC owned, operated, managed, and/or controlled the Motel 6 located at 1801 Embarcadero, Oakland, California.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

24. Defendants GLASJAR PROPERTY, LLC; D VAL HOTEL, LLC; KRISHNA HOSPITALITY, LLC; and OAKLAND HOTEL, LLC; MOTEL 6 OPERATING, LP; and G6 HOSPTIALITY PROPERTY, LLC; will collectively be referred to as "Motel 6 Location Defendants".

25. Motel 6 Location Defendants and Super 8 Location Defendants will be collectively referred to as "Hotel Location Defendants".

26. Defendant G6 Hospitality, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

27. Defendant G6 Hospitality Property, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas. At all relevant times from approximately 2012-2019, G6 Hospitality Property, LLC, owned, operated, managed, and/or controlled the Motel 6 located at 1455 Enterprise Street, Vallejo, California. At all relevant times from approximately 2013-2021, G6 Hospitality Property, LLC owned, operated, managed, and/or controlled the Motel 6 located at 1801 Embarcadero, Oakland, California.

28. Defendant G6 Hospitality Franchising, LLC., is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

29. Defendant Motel 6 Operating, LP., is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas. At all relevant times from approximately before 2011 through 2013, Motel 6 Operating, LP owned, operated, managed, and/or controlled the Motel 6 located at 1801 Embarcadero, California.

30. Defendants G6 Hospitality, LLC; G6 Hospitality Property, LLC.; G6 Hospitality Franchising, LLC.; Motel 6 Operating, LP., will collectively be referred to as "G6 Defendants." G6 Defendants are registered to do business in the State of California.

31. At all relevant times, G6 Defendants maintained, inspected, supervised, branded and controlled the following locations; and transacted business in the State of California



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

and purposefully availed itself to the State of California through its operation and control of the following Motel 6 locations: Motel 6, 1801 Embarcadero, Oakland, California and 1455 Enterprise Street, Vallejo, California.

32. As hotel operators and controlling-entities, G6 Defendants, and Wyndham control the training, policies and operations for its branded properties, including the subject Motel 6 locations, the subject Super 8 respectively, and did at all relevant times when they allowed Plaintiff JANE DOE to be trafficked at their properties. Through each of their agency and employment relationships with the staff at the subject properties and the business relationship with the individuals who trafficked Plaintiff JANE DOE at their hotels and motels, G6 Defendants and Wyndham knowingly benefited and received money from the room rentals as a direct result of their participation in a venture, which it knew or should have known was engaged in sex trafficking.

33. At all relevant times, G6 Defendants and Wyndham (the "Parent Hotel Defendants") exercised control over each of their franchisees for the subject properties franchised. G6 Defendants directly owned both named locations for at least a portion of JANE DOE's trafficking where JANE DOE was trafficked.

34. G6 Defendants and Wyndham received a percentage of the gross room revenue from the money generated by the operations of their respective branded properties at issue in this case including a percentage of the revenue generated for the rate charged on the hotel guest rooms at their properties in which Plaintiff JANE DOE was abused, raped and trafficked for sex.

35. G6 Defendants is one of the largest hotel brands in the world. G6 Defendants control, market, brand, and hold itself out as the owner and controller of dozens of budget motels under the brand Motel 6® in the state of California, including the subject Motel 6 locations. At all relevant times, G6 Defendants directly owned, controlled and/or operated the Motel 6s located at 1801 Embarcadero, Oakland, CA and 1455 Enterprise Street,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

Vallejo, California.

36. Whenever reference is made in this Complaint to any act, deed, or conduct of Motel 6 Location Defendants, the allegation is that the Motel 6 Location Defendants engaged in the act, deed or conduct by or through one or more of their officers, directors, agents, staff, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the G6 Defendants.

37. Whenever reference is made in this Complaint to any act, deed, or conduct of the G6 Defendants, the allegations is that the G6 Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, staff, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the G6 Defendants and the Motel 6 Location Defendants.

38. Whenever reference is made in this Complaint to any act, deed, or conduct of Super 8 Location Defendants, the allegation is that the Super 8 Location Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Super 8 Location and Wyndham.

39. Whenever reference is made in this Complaint to any act, deed, or conduct of Wyndham, the allegation is that Wyndham engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Wyndham, and the Super 8 Location Defendants.

40. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as ROES 1 through 50, inclusive, are presently unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when they



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

are ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's injuries were proximately caused by their conduct.

41. At all relevant times, each G6 Defendant was the agent, servant, employee, partner, joint venturer, alter ego, or co-conspirator of the remaining G6 Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and with the knowledge, permission, and consent of the other Defendants.

42. At all relevant times, each ROE Defendant was the agent, servant, employee, partner, joint venturer, alter ego, or co-conspirator of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and with the knowledge, permission, and consent of the other Defendants.

43. Plaintiff is informed and believes that the Roe Defendants include, but are not limited to:

- owners, operators, and managers of the subject hotel properties;
- employees, front desk staff, housekeepers, and maintenance personnel;
- security personnel and contractors;
- franchisees and franchise operators;
- corporate officers, supervisors, and decision-makers;
- property management entities; and
- other persons or entities who participated in, facilitated, enabled, ignored, or financially benefited from the trafficking venture described herein.

44. Plaintiff is further informed and believes that each Roe Defendant knowingly participated in, assisted, facilitated, enabled, permitted, ratified, or failed to prevent the sex trafficking of Plaintiff occurring at the subject hotel properties, despite actual or constructive knowledge of clear indicators of trafficking and the trafficking venture that trafficked Plaintiff.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

45. Plaintiff is informed and believes that each Roe Defendant participated in, directed, authorized, controlled, ratified, or otherwise caused the wrongful acts alleged herein, including acts and omissions that allowed Plaintiff's trafficking to occur and continue at the subject hotel properties.

## JURISDICTION AND VENUE

46. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TVPRA").

47. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, led to injuries that occurred in the judicial district where this action is brought.

48. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is deemed to reside in this judicial district, and all Defendants are registered to do business in the State of California.

## SEX TRAFFICKING UNDER FEDERAL LAW

49. Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[5]

50. The requirements for liability under the TVPRA on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value" (2) "from participating in a venture" (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

51. "Sex trafficking" is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the

[5] 18 U.S.C. §1591; 22 U.S.C. § 7102.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

52. The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age." 22 U.S.C. § 7102(11).

## FACTUAL ALLEGATIONS

### Trafficking of Plaintiff

53. Starting in 2011 Plaintiff was subjected to sex trafficking at the subject hotels listed above.

54. Plaintiff was subjected to sex trafficking at these hotels through 2023. Plaintiff's trafficker rotated her between these hotels. These hotels were used by Plaintiff's trafficker for days or weeks at a time at a time, encountering the same staff.

55. Plaintiff's trafficker would use the same named hotels so often that she started to quickly recognize staff. The front desk and other staff would consistently see Plaintiff with her trafficker and would have realized they kept returning and exhibiting the well-known red flags of trafficking.

56. Some of the staff, as indicated below, was friendly with Plaintiff's trafficker and it was clear that they knew she was being trafficked.

57. Plaintiff's trafficker maintained continuous and coercive control over Plaintiff for more than a decade through violence, threats against her and her family, drug dependency, and a network of associates.

58. Plaintiff was trafficked and violently forced to have sex even while she was pregnant.

59. The force, fraud, and coercion employed by Plaintiff's trafficker to control her were systematic, sustained, and severe throughout the trafficking period from 2011 through 2023. They employed physical violence, death threats directed at Plaintiff and her family,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

drug coercion, and psychological domination as interlocking mechanisms of control.

60. The trafficker's physical violence and methods of control over Plaintiff included:

a. Holding Plaintiff down and permitting buyers and associates to violently rape her;

b. Threatening to kill Plaintiff and members of her family, including credible threats made while the Trafficker and his associates were in possession of guns;

c. Routinely carrying a firearm as a tool of intimidation and control over Plaintiff and other trafficking victims;

d. Locating and forcing Plaintiff back into the trafficking operation after her escape attempts, including organizing associates to physically assault Plaintiff;

e. Maintaining surveillance and control over Plaintiff even during trafficker's incarceration through his network of associates who monitored and threatened Plaintiff and continued to traffick her;

f. Using drug coercion to impair Plaintiff's judgement, maintain her chemical dependency, and ensure continued compliance with the commercial sex operation.

61. Jane Doe's trafficker exercised control over room reservations and the manner in which commercial sex acts were arranged and conducted at the subject hotel properties. At various times, her trafficker had buyers book and pay for rooms directly through their connections; at other times, they used different identification documents to rent rooms; and at other time, rooms were rented in Plaintiff's name or in the names of other trafficking victims.

62. Plaintiff knew throughout her trafficking period that she would and did face severe physical harm or threat of death if she did not comply with the trafficker's demands. This



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

belief was not unfounded—her trafficker had demonstrated on multiple occasions his willingness to carry out violence against Plaintiff and to direct his associates to harm her. Every attempt to escape was met with renewed surveillance, threats, and violence.

63. JANE DOE's trafficker was extremely violent. He would strangle her multiple times a week for years. Oftentimes this strangulation caused her to go unconscious and urinate on herself. She was beat over the head, sustained bruised and fractured ribs and broken noses. JANE DOE was kidnapped and beaten.

64. For twelve (12) years, JANE DOE lived in a constant state of control, violence, and terror.

65. Plaintiff's trafficker and his associates would always have guns as a way to keep control of Plaintiff and force her into sex trafficking.

66. Plaintiff was usually with her trafficker when they would check in to each one of these hotels. Plaintiff was visibly scared, would not make eye contact, was withdrawn, and timid during interactions with hotel staff.

67. Cleaning staff was not allowed to clean the rooms or change out linens or towels. Instead, the trafficker or Plaintiff would ask for an extraordinary amount of linens and towels throughout their stays.

68. While staying at the subject hotels Plaintiff's trafficker would post advertisements online offering Plaintiff for commercial sex acts to take place at the hotels and communicated with buyers responding to advertisements. While staying at the subject hotel locations, Plaintiff was forced to take multiple dates per day at all hours of the day and night.

69. Each stay at the subject Motel 6 locations and Super 8 location, resulted in several consistent red flags, including but not limited to:

a. Rooms being rented in various or under false identification—with the actual person who was clearly in control being the trafficker, who was not





SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

always registered as a guest;

b. Paying for stays in cash, paying for extended stays on a day-today basis;

c. Requesting certain rooms away from other guests;

d. Obvious signs of illegal drug use;

e. Frequent requests for clean linens or towels;

f. Unusually large number of used condoms in the trash;

g. Unusually large numbers of male visitors going in and out of Plaintiff's room at all times during the day and night who were not registered guests;

h. Visible signs of physical abuse;

i. Multiple women being trafficked by Jane Doe's trafficker simultaneously in several different rooms;

j. Women wearing clothing inappropriate for the weather; and loud noises of abuse and other violence audible to staff and/or other rooms.

70. These red flags were open and obvious to anyone working at the subject hotel locations and lasted for years.

**The Hotel Industry's Role in Sex Trafficking.**

71. While the term "human trafficking" incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of all illegal drugs.[6]

72. The hospitality industry plays a crucial role in the sex trade.[7] Hotels have long profited from their reputations as havens of privacy and discretion for the offending.

---

[6] Profits and Poverty: The Economics of Forced Labor. May 24, 2014. International Labor Organization. Available at: http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index htm.

[7] Cavagnaro, Giovanna L. C. 2017. Sex Trafficking: The Hospitality Industry's Role and Responsibility. Cornell University School of Hotel Administration. Available at: http://scholarship.sha.cornell.edu/honorstheses/3.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

Despite the known risks and known trafficking crimes, hotels, including the subject locations, offer anonymity and non-traceability to the traffickers, making them ideal venues for crime and sex trafficking, in particular. Hotels, including the subject hotels and owners, knowingly harbor traffickers and those trafficked.

73. Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[8] For years, sex traffickers have "been able to reap their profits with little risk when attempting to operate within hotels."[9]

74. According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur. Traffickers and buyers alike frequently use hotel rooms to exploit victims.

75. In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels. Hotels have been found to account for over 90% of commercial exploitation of children.

76. Due to the overall complacency, complicity, reckless disregard in addressing, and often times knowing choices of the hospitality industry not to address the known issue of sex trafficking, hotels are the venue of choice for sex trafficking. Traffickers and buyers capitalize on the hotel industry's general refusal to (1) adopt and enforce companywide anti-trafficking policies from the corporate to the property level, (2) train staff on what to look for and how to respond, and/or (3) establish safe and secure reporting mechanisms for those on the front lines.

---

[8] This is not only a dominant issue, it's an epidemic issue." See Jaclyn Galucci, Human Trafficking is an Epidemic in the U.S. It's Also Big Business, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us- slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id.

[9] See Human Trafficking in the Hotel Industry, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; see also Eleanor Goldberg, You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

77. Every day, at least thousands of hotel employees witness red flags and manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur and where it has been known for decades to occur.

78. In addition to their unique position in this epidemic, hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation and should be held accountable when or if they fail to comply. As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."

79. Estimates by attorneys for the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[10] The 2016 Trafficking in Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.

80. The complicity of the hospitality industry is essential to the perpetuation of human trafficking, allowing traffickers to remain transient, collect profits, and evade detection. Sex trafficking ventures move from place to place so that they are less visible to law enforcement. Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attendant with booking rooms with certain hotel chains and other hotels that tend to protect them, including the subject locations in this complaint— they know it is unlikely that they will be disturbed.

81. Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry since at least

[10] U.S. Dep't of State. 2016. 2016 Trafficking in Persons Report, at 387. Available at: https://www.state.gov/documents/organization/258876.pdf.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

the early 2000s, including Defendants, on best practices for identifying and responding to sex trafficking. This started years before Plaintiff JANE DOE was trafficked at Defendants' properties.

82. Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Washington Attorney General, Love 146, BEST, and EPCAT, among numerous others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[11] This was known or knowable to Defendants before and at the time Plaintiff JANE DOE was being trafficked at their properties.

83. Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of and were aware or should have been aware of at all subject times of the trafficking alleged herein, are specific to the hotel industry. These include learning to identify warning signs and indicators of sex trafficking at hotels and lodging, including but not limited to:

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;
- Individuals show signs of physical abuse, restraint, and/or confinement;
- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;
- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;
- Individuals lack freedom of movement or are constantly monitored;

---

[11] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

- Individuals avoid eye contact and interaction with others;
- Individuals have no control over or possession of money or ID;
- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;
- Individuals have few or no personal items—such as no luggage or other bags;
- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;
- A group of girls appears to be traveling with an older female or male;
- A group of males or females with identical tattoos, scars, or markings in similar locations. This may indicate "branding" by a trafficker;
- A group of females being controlled by one or more males;
- Being controlled by or drug abuse or frequent use of drugs such as GHB, Rohypnol, Ketamine, fentanyl, MDMA (Ecstasy), heroine, Methamphetamines, and Cocaine;
- Possession and presence of excessive sexual paraphernalia such as condoms or lubricant;
- Requesting more towels than an average guest would normally use;
- Condoms, drug paraphernalia, bondage, bloody towels found in rooms or trash;
- Lack of legal identification or fake identification;
- Females with visible signs of injury, past or present;
- Non-guests coming in and out of the room;
- Money exchanged in parking lots or common areas combined with foot traffic in and out of a room;
- Possession or use of multiple cell phones; and
- Possession or use of large amounts of cash or pre-paid cards.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

84. At all times of trafficking alleged herein, Defendants, and each of them, understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Defendants, and each of them, knew or should have known that signs of commercial sex or "prostitution" activity in their hotels were in fact signs of sex trafficking, and their own training materials taught the same, and each Defendant saw or should have seen signs of the sex trafficking of Plaintiff JANE DOE that were observable to Defendants.

85. At and before the time of JANE DOE being trafficked, Defendants, and each of them, were aware or should have been aware of these signs of sex trafficking when operating, inspecting, monitoring, controlling, and managing their hotel properties, including the subject properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

86. Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to sex trafficking, it has become apparent that the decision of a hotel chain and hotel operators—here Defendants—to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its hotels, is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

**<u>Parent Hotel Defendants' Control Over Their Hotel Location Defendant</u>**

87. Parent Hotel Defendants are vicariously liable for the acts, omissions, and knowledge of their Hotel Location Defendants (franchisees) and staff of the Hotel Location Defendant locations named herein, which are Parent Hotel Defendants' actual agents or subagents.

88. Upon information and belief, it is a standard practice in the hospitality industry, followed by all Defendants for parent companies to set exacting brand quality standards



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

reaching everything from the temperature at which the coffee shall be served to the number of pillows that are placed on the beds, to the types of payments accepted, to when, where, and how guests are greeted.

89. Parent Hotels Defendants provide their Hotel Location Defendants with signage on and in front of the building. This is done to assure customers that when they check in, they can expect an experience consistent with the standards of the Parent Hotel Brand. This brand logo is displayed on everything in the hotel, such as pens and paper on the bedside table and staff uniforms worn at the front desk during check-in.

90. Parent Hotel Defendants provide their hotel branded locations brand name recognition, a marketing campaign, and hotel listings in the Global Distribution System and other online agency databases. They also provide access to their brand-wide central reservation systems, 800 numbers, revenue management tools, brand loyalty programs, and company websites. Therefore, bookings and room reservations are primarily controlled by Parent Hotel Defendants.

91. Parent Hotel Defendants subject Hotel Location Defendants and/or their franchisees to detailed standards and requirements regarding the operation of the Hotel Location Defendant named herein through franchising agreements, detailed written policies and manuals and through other formal and informal protocols, directives, mandates, reporting, and expectations imposed by the Parent Hotel Defendants.

92. Upon information and belief, Parent Hotel Defendants require their branded Hotel Defendants' properties to use a property management system. This system is linked to Parent Hotel Defendants' corporate network and data center. This is to, among other things, receive reservations, and process payment transactions.

93. Upon information and belief, per the relevant franchise agreements, Parent Hotel Defendants may enforce their brand standards through periodic inspections of the hotel locations, backed up with the ultimate threat of termination of the agreement.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

**Motel 6 Location Defendants Acted as Actual Agents of G6 Defendants**

94. G6 Defendants are vicariously liable for the acts, omissions, and knowledge of OAKLAND HOTEL, LLC; GLASJAR PROPERTY, LLC; D VAL HOTEL, LLC; KRISHNA HOSPITALITY, LLC; MOTEL 6 OPERATING, LP; and G6 HOSPITALITY PROPERTY, LLC (together referred as Motel 6 Location Defendants), their staff and staff of all of the locations named herein, which are G6 Defendants' actual agents, or subagents including employees.

95. G6 Defendants subjected the Motel 6 locations named herein and the owners to detailed standards and requirement regarding the operation of the Motel 6 locations named herein through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, reporting, and expectations imposed by the G6 Defendants.

96. Upon information and belief, at all times relevant herein, Motel 6 Location Defendants and each of them, were the apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible servants, servants, apparent ostensible staff, staff, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of the G6 Defendants and were acting as such within the course, scope and authority of said agency and employment, and that each of the Defendants as aforesaid, when acting as a principal or agent, was negligent, including but not limited to, in the hiring, training, retention, and supervision of each and every other Defendants as an agent, servant, employee, assistant, and consultant.

97. G6 Defendants obscure the full extent of control they exercise over their Motel 6 locations by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those polices and manuals.

98. Upon information and belief, the standards that G6 Defendants imposed on Motel 6 Location Defendants:



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

a. Did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools they used at their Motel 6 locations;

b. Covered virtually all aspects of motel operations, including internal operating functions;

c. Dictated the specific manner in which Motel 6 Location Defendants and its motel staff must carry out most day-to-day functions at their Motel 6 location; and

d. Significantly exceeded what was necessary for G6 Defendants to protect its registered trademark.

99. G6 Defendants were in an agency relationship with the Motel 6 Location Defendants. Upon information and belief, this agency relationship was created through G6 Defendants' exercise of an ongoing and systemic right of control over the Motel 6 Location Defendants, including the means and methods of how Motel 6 Location Defendants conducted daily business through one or more of the following:

a. Sharing profits;

b. Requiring Motel 6 Location Defendants to use G6 Defendants' Motel 6 customer rewards program;

c. Hosting online bookings on G6 Defendant's Motel 6 developed, owned, and operated domain;

d. Regulating internet access for guests;

e. Setting employee wages;

f. Making decisions about employment and budgets, including for security and management;

g. Advertising for management and local positions;

h. Standardized training and methods for Motel 6 Location Defendant staff;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

i. Standardized or strict rules of operation;

j. Oversight in hiring and/or terminating staff and managers;

k. Building and maintaining the Motel 6 properties named herein;

l. Fixing prices; and/or

m. Creating advertising campaigns and unrealistic expectations of safety for guests.

100. G6 Defendants held the subject Motel 6 locations named herein out to the public as possessing authority to act on their behalf.

101. In addition to the ways described above, upon information and belief, G6 Defendants exercised and reserved the right to exercise systemic and pervasive control over the Motel 6 Location Defendants' day-to-day operation at the subject Motel 6 locations named herein, including in the following ways:

a. G6 Defendants required Motel 6 Location Defendants and management to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for G6 to protect their registered trademarks;

b. G6 Defendants provided training for hotel management and select hotel staff on-site at the Motel 6 locations selected by G6 Defendants;

c. G6 Defendants required all motel staff to participate in training it created through an online learning platform it controlled and maintained;

d. G6 Defendants controlled training provided by Motel 6 Location Defendants to motel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e. G6 Defendants retained sole discretion to determine whether all training had been completed satisfactorily;

f. For certain products and services that Motel 6 Location Defendants were required to purchase to operate the Motel 6 locations named herein, G6 Defendants designated approved vendors and prohibited the locations from purchasing goods and services from anyone other than an approved vendor;

g. G6 Defendants required Motel 6 Location Defendants to sign a technology agreement governing the terms under which they must procure and use technical services and software while operating the Motl 6 locations named herein;

h. G6 Defendant set required staffing levels for the Motel 6 locations named herein;

i. G6 Defendants established detailed job descriptions for all positions in its Motel 6 locations and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

j. G6 Defendants set requirements for the hiring process used by the Motel 6 locations named herein and oversaw employee discipline processes and termination decisions;

k. G6 Defendants provided benefits for staff of the Motel 6 Location Defendants;

l. G6 Defendants required Motel 6 Location Defendants to use a customer resource management program maintained and operated by the G6 Defendants;

m. G6 Defendants controlled channels for guests to report complaints or provide feedback regarding the Motel 6 locations and directly participated in the response and/or supervised the response to customer complaints or other feedback. G6 Defendants retained the right to provide refunds or other compensation to guests and to require Motel 6 Location Defendants to pay associated costs;

n. G6 Defendants generated reports and analysis of guest complaints and online reviews for the subject Motel 6 locations named herein;

o. G6 Defendants required the Motel 6 Location Defendants to use Guest Relations Application owned, operated, and maintained by G6 Defendants to manage all guest data information. G6 Defendants could use the backend of this system to analyze and generate reports and did so;

p. G6 Defendants set detailed requirements for insurance that the Motel 6 Location Defendants had to have and to bill them directly for that insurance if G6 Defendants determined that they had not purchased adequate insurance;

q. G6 Defendants regularly audited the books and records of Motel 6 Location Defendants;

r. G6 Defendants retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of any agreements if the Motel 6 Location Defendants violated any of the G6 Defendants' detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the Motel 6 locations named herein;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

s. G6 Defendants conducted frequent and unscheduled inspections of Motel 6 locations, including the Motel 6 locations named herein;

t. G6 Defendants controlled all marketing for the subject Motel 6 locations and prohibited them from maintaining any online presence unless specifically reviewed and approved by the G6 Defendants;

u. G6 Defendants imposed detailed recordkeeping and reporting requirements on Motel 6 Location Defendants regarding virtually all aspects of hotel operations;

v. G6 Defendants supervised and controlled day-to-day operations of the Motel 6 locations named herein through detailed information and extensive reports that it obtained through the property management system and other software systems it also required Motel 6 Location Defendants to use; and

w. G6 Defendants retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of motel operations.

**G6 Defendants Knowingly Benefit from Participation in a Venture with Each Other, Motel 6 Location Defendants and Plaintiff's Non-Hotel-Employee Traffickers.**

102. G6 Defendants specifically own locations and lend their name and likeness to third party owners, while the building and operations are under the brands' supervision and control. This is done through brand standards, franchise agreements, and maintaining control over all aspects of operations. This allows the parent brand to exchange the high risk that is inherent in owning an asset like a motel for the low risk associated with owning a property contract or franchise contract and still profit. Because of this, the motel locations and parent brands are inextricably intertwined. Here, Motel 6 Location Defendants and G6 Defendants are inextricably intertwined.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

103. Additionally, the named Motel 6 locations were directly owned and operated by a G6 Defendant entity for at least a portion of JANE DOE's trafficking, so they are even more intertwined since G6 Defendants essentially all operate together and share the same information, data, profits, revenue and are controlled by the same individual people.

104. The average customer does not see the franchisor/franchisee relationship. The parent brand gives the franchisee or individual property its identity. The parent brand provides the signage that assures customers that if they check into that hotel they can expect the standards consistent with the parent brand. The motel 6s are advertised as motel 6s, not a motel owned by anyone other than G6. The G6 Defendants hold themselves out to the public as the owners of the properties. Brand requirements and rules are contractual with the power to control weighed heavily toward the corporate parent brand. The Brand, here G6 Defendants, retain control over the Motel 6 properties named herein.

105. At all times of trafficking alleged herein and currently, booking and room reservations are controlled by the corporate parent brands, the G6 Defendants.

106. Upon information and belief, at all times of trafficking alleged herein and currently, the franchised Motel 6 Location Defendants typically pay and paid a percentage of their total revenue back to the G6 Defendants and is/was required to develop and maintain the property in accordance with the parent brand G6 Defendants' standards as they are laid out in the franchise agreements. G6 retains the right of entry and inspection, response to crime, response to trafficking, and trainings related to the same.

107. Upon information and belief, per the agreements, the G6 Defendants may enforce standards through periodic inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate, unsafe, or operating in violation of any laws. The right of the G6 Defendants to enforce their brand standards, including safety standards, is not just their right but their responsibility. Here, G6 Defendants did have employees in charge of inspecting and that did inspect the properties at relevant times



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

when plaintiff JANE DOE was being trafficked there and who did see all of the red flags of Jane Doe being trafficked and who knew or should have known that she, as well as several others, were indeed being trafficked for sex for long periods of time at their Motel 6 locations. G6 Defendants' officers, directors, managers and employees directly controlled every single aspect of operations at the subject locations; and they controlled most operations with the right to end their franchising contract.

108. At all times of trafficking alleged herein, G6 Defendants dictated franchisee policies related to safety, security, human trafficking, employee training and franchisee's response to crime. As to the properties they owned, they dictated every single aspect of day-to-day operation and are directly responsible for their employees, managers, supervisors, regional managers, officers, directors and agents conduct in knowingly facilitating, aiding, abetting, and allowing trafficking to occur at the subject Motel 6 locations for profit.

109. Upon information and belief, at all times of trafficking alleged herein, reservation information for rooms at the subject motels passed through a system operated and managed by the G6 Defendants.

110. Defendants profited from the sex trafficking of Plaintiff JANE DOE when they rented rooms to Jane Doe and/or her traffickers or their associates when they knew or should have known that human trafficking was occurring due to several red flags being apparent and visible.

111. Defendants directly benefited from the steady stream of income that Jane Doe's trafficker, and many other traffickers, brought to their motels and motel brands. Defendants profited from each and every room that Jane Doe's trafficker rented where Jane Doe was harbored and maintained for the purpose of sex trafficking.

112. Defendants facilitated the trafficking through its practices, policies, and procedures. They failed to take appropriate action to prevent the trafficking of individuals, including Jane Doe, for sex so they could continue to profit from the room rentals, and business that



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

trafficking brings. They accommodated Plaintiff Jane Doe's trafficker's requests, allowed cash payments for extended periods on a daily basis, allowed men to parade in and out despite not being guests, allowed money exchanges to take place in front of them; and saw Jane Doe, who looked very young, being drugged and controlled by older men that looked like gang members, and watched and heard physical abuse and rape occurring daily while Plaintiff Jane Doe was trafficked at each property for long periods of time regularly.

113. G6 Defendants and Motel 6 Location Defendants owned and operated the subject Motel 6 locations while buyers paraded in and out of rooms rented for the purpose of trafficking Jane Doe. Their staff and agents observed and should have observed the buyers parading in and out of its hotel rooms to engage in the sex trafficking of Jane Doe. Their staff and agents observed or should have observed the trafficking occurring regularly and for multiple days at a time at the subject hotel locations but allowed it so they could profit.

114. Plaintiff Jane Doe's trafficking at the subject hotel locations was a result of G6 Defendants and the Motel 6 Locations Defendants' participation in a venture with each other as well as Jane Doe's criminal trafficker. If G6 Defendants and Motel 6 Locations Defendants had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe's trafficking at the subject hotel locations and Jane Doe would not have suffered the harm she did there.

115. Despite its actual or constructive knowledge that the venture it was engaged in was in violation of 18 U.S.C. §§1591(a) and 1595(a) through the conduct of motel staff and the widespread trafficking at the subject motel locations named herein, G6 Defendants participated in the venture by continuing to associate with the motel staff and with other Motel 6 Location Defendants to operate the hotel locations named herein in a way that it knew or should have known would lead to further violations of 18 U.S.C. § 1591(a) including trafficking of victims like Jane Doe.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

116. G6 Defendants and Motel 6 Location Defendants financially benefited from renting rooms to Jane Doe and Jane Doe's trafficker on numerous occasions since they benefited each day that Jane Doe was forced to engage in commercial sex at each of the Motel 6 locations for years. At all times relevant, upon information and belief, G6 Defendants were benefiting during and after all were directly notified of the commercial sex and numerous red flags of sex trafficking at the subject Motel 6 locations through direct employee reports, customer reports, law enforcement, and the public. G6 Defendants participated in this venture through the conduct described herein as they were jointly responsible for relevant aspects of motel operations at the subject motel locations.

**G6 Defendants and Motel 6 Location Defendants' Knowledge of Sex Trafficking**

117. Defendants' knowledge is not limited to a general awareness of the problem of sex trafficking in the hotel industry. Defendants have known, since well before Jane Doe's trafficking, that sex trafficking was ongoing and widespread at their Motel 6 locations, including the subject locations named herein.

118. Use of the G6 Defendants' branded properties for sex trafficking is well known to Defendants. Upon information and belief, before and at the time Jane Doe was trafficked at the subject properties, Motel 6 Location Defendants and G6 Defendants monitored criminal activity occurring at the branded hotels and were aware of activity indicating commercial sex, sex trafficking, and related crimes occurring at those branded motels, including the specific Motel 6 properties where Jane Doe was trafficked.

119. The method of operation at the subject Motel 6 locations named herein was consistent with the trafficking operation used across hotel properties and was observable to hotel staff and management throughout Jane Doe's trafficking:

a. Rooms were registered in Plaintiff's name, in the trafficker's name, or under various identification documents depending on the circumstances, with the actual person in control clearly being the trafficker;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

b. Multiple rooms being rented at the same time;

c. Multiple unregistered male visitors arriving and departing from Jane Doe's room in rapid succession at all hours of the day and night, consistent with commercial sex buyer activity;

d. Jane Doe appeared physically injured, visibly distressed, malnourished and under the coercive and violent control of her trafficker throughout her stays;

e. Controlled substances were present at the property in connection with the trafficking operation. Jane Doe bore visible signs of substance use and forced drug dependency;

f. Jane Doe's trafficker carried a firearm at the property and used it as a tool of intimidation and control over Jane Doe;

g. Payments for commercial sex acts were made in cash at the subject Motel 6 properties named herein;

h. Physical evidence of violence were present and visible on Plaintiff throughout the trafficking period, including injuries consistent with sustained physical assault;

i. Guest reviews of the Motel 6 Vallejo dating from 2013 through the trafficking period document that prostitution, trafficking, and drug dealing were openly visible at the property across multiple years, establishing that these conditions were chronic and known to property operators;

j. The same recurring pattern of stays, room registrations, and high-volume visitor traffic repeated at these two Motel 6 properties over extended periods of time, were consistent with an ongoing commercial sex trafficking operation;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

k. Jane Doe's trafficker loitering outside of the room while buyers were in the room with Jane Doe and going in immediately after a buyer would leave to collect the money;

l. The combination and cumulative pattern of the foregoing indicators constituted unmistakable and recognizable evidence of commercial sex trafficking that any reasonable owner, manger, or employee would have recognized;

m. Hotel staff and management at the Motel 6 located at 1455 Enterprise Street, Vallejo, California were personally acquainted with Jane Doe's trafficker. Staff, employees and management treated him as a recognized regular, and knowingly provided rooms to him;

n. Hotel employees at the Motel 6 located at 1455 Enterprise Street, Vallejo, California purchased sex with Jane Doe from her trafficker on multiple occasions. This establishes that the relationship between the motel employees/owners and the trafficking operation was not one of passive observation but of active participation;

o. Hotel employees at the Motel 6 located at 1801 Embarcadero, Oakland, California, asked about soliciting Jane Doe for sex.

p. Commercial sex buyers returned repeatedly to the Motel 6 locations named herein as known and recurring patrons. Jane Doe's trafficker had regular buyers and hotel staff would have recognized them as such;

q. Hotel staff and management witnessed violence against women on the property multiple times—including physical assaults consistent with a trafficker's control of their victim—and took no action to intervene, call law enforcement, or report what they observed, effectively permitting the properties to function as a space where traffickers could abuse and exploit

women without accountability. This included the observable abuse and exploitation of Jane Doe.

120. Defendants knew their staff at the subject Motel 6 properties were facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at their brand properties, including but not limited to choosing not to implement policies and procedures known to be necessary to stop known trafficking; not requiring identification cards or IDs; allowing daily payments of cash for extended stays; complying with requests for rooms to be rented away from other guests; allowing traffickers to escort bruised and battered women to rooms; allowing several buyers to come and out of the rooms that the victims were trafficked out of without ID; ignoring yelling and screaming from rooms where trafficking took place; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse, and prostitution; forming relationships with traffickers and treating traffickers like "regulars" with benefits by accommodating specific requests that entail known signs of trafficking and not reporting the trafficking or taking any steps to prevent or stop it.

121. Calls for Service records for the Motel 6 locations named herein show that hundreds of calls for service to these properties occurred throughout Jane Doe's trafficking. These calls involved violent crimes, domestic violence, sexual offenses, narcotics, weapons and other nuisance calls.

122. Online reviews of the Motel 6 located at 1455 Enterprise Street, Vallejo, California contain numerous explicit references to prostitution, sexual solicitation, and trafficking-related activity, spanning many years and over multiple review platforms. Reviewers repeatedly state that prostitution was occurring on the property, including reports of "suspected prostitution being conducted in a couple of rooms," frequent male visitors coming and going at all hours, and women soliciting sex from guests. Several reviewers directly referenced "hookers," "internet hookers," and "ladies of the night," describing the



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

motel as a known location for commercial sex activity.

123. In addition to prostitution, reviews for the Motel 6 located at 1455 Enterprise Street, Vallejo, California, describe behavior consistent with trafficker-controlled or organized criminal activity, including men overseeing activity, intimidation of guests, and groups effectively controlling portions of the property. Reviewers describe drug dealing occurring alongside sex work and rooms being used for both purposes. Multiple guests warn others---particularly women and families—to stay away.

124. The open and notorious nature of the commercial sex activity and trafficking at the Motel 6 Vallejo – Six Flags West (1455 Enterprise Street) is independently corroborated by publicly available guest reviews spanning from at least 2013 through the trafficking period.

a. A February 2013 TripAdvisor review describes a man approaching a guest's door and soliciting sex and drug purchases.[12] A September 2014 review describes arriving to men smoking from a glass pipe in the parking lot, guests being asked "how much for the girl," and witnessing an explicit sexual proposition.[13] A November 2014 review states that "Prostitutes, pimps, drugs were coming out of many of the rooms."[14] A March 2017 review describes a party in an adjacent room involving motorcycle gang members, drug use, and "prostitutes and strippers."[15] Other reviews describe the property as "sketchy" and "unsafe," with guests fleeing in the middle of the night after

[12] TripAdvisor User Review by "Ee" (Feb. 2013), Motel 6 Vallejo CA – Six Flags West, 1455 Enterprise Street, Vallejo, CA (reporting that a man approached the guest's door, attempted to pull his pants down, and asked the guest's wife if she wanted to purchase drugs).

[13] TripAdvisor User Review by "Sage98001" (Sep. 2014), Motel 6 Vallejo CA – Six Flags West, 1455 Enterprise Street, Vallejo, CA.

[14] TripAdvisor User Review by "Tanya A" (Nov. 2014), Motel 6 Vallejo CA – Six Flags West, 1455 Enterprise Street, Vallejo, CA.

[15] TripAdvisor User Review by "Yvonne S" (Mar. 2017), Motel 6 Vallejo CA – Six Flags West, 1455 Enterprise Street, Vallejo, CA.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

hearing fighting and screaming and witnessing open drug use.[16][17] Yelp reviews dating to 2018 and 2023 similarly describe "drugs hookers and pimps" and "prostitutes coming in and out all night."[18][19]

125. G6 Defendants and Motel 6 Location Defendants who owned the Motel 6 located at 1455 Enterprise Street, Vallejo, California had access to these reviews that clearly put them on notice.

126. Online reviews for the Motel 6 located at 1801 Embarcadero, Oakland California contain multiple explicit and detailed references to prostitution, pimps and sex-trafficking-adjacent activity. Reviewers repeatedly report presence of sex workers on the property, including accounts of one sex worker entering a guest's room in the early morning hours and soliciting sex. Several reviewers describe pimps, hookers, and sex workers operating openly on the premises.

127. One online reviewer for the Motel 6 located at 1801 Embarcadero, Vallejo, California, stated that prostitution and illicit sexual activity were witnessed by an on-duty security guard. In addition to prostitution, reviewers describe an environment marked by heavy drug use, intimidation, theft, and violence, with some guests reporting feeling unsafe.

128. G6 Defendants and Motel 6 Location Defendants who owned the Motel 6 located at 1801 Embarcadero, Vallejo, California had access to these reviews that clearly put them

---

[16] TripAdvisor User Review, Motel 6 Vallejo CA – Napa Valley (1455 Enterprise Street, Vallejo, CA), available at https://www.tripadvisor.co.nz/ShowUserReviews-g33212-d79671-r372368394-Motel_6_Vallejo_CA_Napa_Valley-Vallejo_California.html.

[17] TripAdvisor User Review, Motel 6 Vallejo CA – Six Flags West (1455 Enterprise Street, Vallejo, CA), available at https://www.tripadvisor.com/Hotel_Review-g33212-d240160-Reviews-Motel_6_Vallejo_CA_Six_Flags_West-Vallejo_California.html (guest describing the property as "a bad neighborhood or straight-up ghetto," reporting fighting and screaming throughout the night, witnessing a homeless person smoking crack/methamphetamine, and fleeing the property in the middle of the night out of fear of being shot or sexually assaulted).

[18] Yelp User Review (Dec. 2023), Motel 6, Vallejo, CA.

[19] Yelp User Review by "Kim S." (Jan. 2018), Motel 6, Vallejo, California (stating "prostitutes coming in an out all night, very unprofessional" and describing rooms as dirty and untidy; reviewer also identified a manager named "Cindy" as having misrepresented conditions at the property).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

on notice.

129. At the Motel 6 located at 1455 Enterprise, Vallejo, California, Jane Doe snuck down to the front desk and asked to use their phones to call for help. During these interactions, it was clear that Jane Doe was in distress and being trafficked.

130. In addition to the fights occurring in plain sight of G6 Defendants' staff, Jane Doe's trafficker was extremely violent with her within the walls of the Motel 6 hotel rooms. Sounds of beatings, women screaming, and loud arguments were heard by staff and nearby guests. Employees at the Motel 6 locations named herein didn't just hear the violence, they saw the aftermath of injuries caused by the violence.

131. Information that has become public through news stories establishes the entrenched and pervasive nature of Defendants' role in providing a venue where sex trafficking has continued unabated for years. Defendants have provided the means and venue necessary for traffickers to traffic victims, including Jane Doe.

132. Taken together, these facts demonstrate that G6 Defendants and Moel 6 Location Defendants had actual, constructive, and red-flag notice that Jane Doe and others were being sex trafficked at the two Motel 6 properties named herein. Any reasonably trained hotel or motel operator, employee, manager, and/or owner would have recognized these indicators as consistent with sex trafficking.

133. Upon information and belief, multiple employees at the subject Motel 6 properties named herein, including management-level employees, observed, or were made aware of these obvious signs of Jane Doe's trafficking while acting within the scope and course of their employment.

134. As such, G6 Defendants and Motel 6 Location Defendants knew and should have known that Jane Doe was being trafficked at the subject Motel 6 locations.

**G6 Defendants Facilitated the Trafficking of Plaintiff at the Motel 6 Locations**

135. Upon information and belief, during the times Plaintiff was trafficked at the subject



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

Motel 6 properties named herein, G6 Defendants participated directly in aspects of the operation of the subject Motel 6 locations that influenced whether and to what extent trafficking occurred at the hotels including but not limited to the following:

a. G6 Defendants assumed responsibility and control over the human trafficking response of their subject motel property, including design and implementation of practices to prevent trafficking, safety, and security procedures, employee, and franchisee education, training and response, partnership with external organizations, and advocacy;

b. G6 Defendants retained control over when its branded hotel would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity at their branded hotel location;

c. G6 Defendants retained control over determining which hotels needed additional training or other resources on the risk of trafficking occurring and other related criminal activity;

d. G6 Defendants retained control to terminate hotel staff and/or agreements based on the response to human trafficking;

e. G6 Defendants determined whether training is provided, when it is provided, the content of the training, how the training is delivered, who receives it, and the consequences of a Motel 6 location and/or it's employees not participating or failing to follow such training; and

f. G6 Defendants retained control over drafting, supervision, overseeing, and enforcement policies and procedures for housekeeping services, front desk services, operations and security at the subject Motel 6 locations, including how often rooms must be entered, how to respond to guest refusals of entry into rooms, how to view cameras, what actions to take to



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

deter conduct and steps to monitor guest safety issues through housekeeping services, front desk staff, and operations and security.

136. G6 Defendants were aware of the fact that its cash and lax policies were promoting sex trafficking at the subject Motel 6 locations but chose not to implement safer parking policies, identification policies, guest policies, security policies, and human trafficking response rules. It even knowingly allowed violations of its rules to assist, facilitate, and support trafficking, which brought a constant income stream to the subject motels and G6 Defendants.

137. Upon information and belief, during the time Jane Doe was trafficked at the subject Motel 6 locations and before, room rentals for trafficking and other illegal activity made up a large portion of the income derived at the subject Motel 6 locations, and upon information and belief, G6 Defendants knew and should have known that room rentals for trafficking made up a large majority of the income derived at the subject Motel 6 locations.

138. As a direct and proximate result of these policies and practices on the part of G6 Defendants, Jane Doe and numerous other victims of sex trafficking and exploitation have been permanently injured and damaged physically, emotionally, psychologically, and financially. G6 Defendants, together with Motel 6 Location Defendants, provided the venues to Jane Doe's trafficker and his associates, and aided and abetted his trafficking of her and other young girls. G6 Defendants have been displaying the same level of participation in the sex trafficking industry for decades.

**Motel 6 Location Defendants Assisted, Supported, and Facilitated the Trafficking of Jane Doe for Sex**

139. Motel 6 Location Defendants had both actual and constructive knowledge of the trafficking of Jane Doe at the hotel locations they owned and operated because the trafficking was the direct result of Motel 6 Location Defendants facilitating the trafficking at the subject locations.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

140. Motel 6 Location Defendants are responsible for the acts, omissions, and knowledge of all employees of the subject Motel 6 locations when operating the hotel because these acts and omissions were committed in the course and scope of employment. Motel 6 Location Defendants ratified these acts and omissions because Motel 6 Location Defendants failed to exercise reasonable care in the hiring, training, and supervision of these employees given the specific risks known and reported to the Motel 6 Location Defendants of sex trafficking occurring at the subject hotel locations.

141. Despite having actual and/or constructive knowledge of widespread and ongoing sex trafficking at their subject locations, Motel 6 Location Defendants continued renting rooms to these traffickers, including the rooms used to sexually exploit victims like Jane Doe.

142. Motel 6 Location Defendants knew or were willfully blind to the fact that Jane Doe was being trafficked and, because of this, benefited from continued association with her trafficker and his associates by providing a venue in the form of hotel rooms and related services to harbor and facilitate Jane Doe's sexual exploitation.

143. Motel 6 Location Defendants also facilitated widespread trafficking at their motel locations including the trafficking of Jane Doe in various ways including:

a. Allowing unreasonable, negligent and inadequate practices for hiring, training, supervising, managing, and disciplining front line staff and on-site staff regarding issues related to human trafficking;

b. Inadequate and inadequately enforced sex trafficking notice and training for motel staff;

c. Choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, laws, and/or applicable franchisor policies and procedures; and

d. Implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the motel staff and owners.

**<u>Super 8 Location Defendants Acted as Actual Agents of Wyndham Defendants</u>**

144. WYNDHAM Defendant is vicariously liable for the acts, omissions, and knowledge of BJH INVESTMENTS, LLC, and PARIJAT INVESTMENTS, LLC (together referred as Super 8 Location Defendants), their staff and staff of the Super 8 located at 2070 Solano Avenue, Vallejo, California, which are Wyndham's actual agents, or subagents including employees.

145. Wyndham Defendant subjected the Super 8 location named herein and the owners to detailed standards and requirement regarding the operation of the Super 8 motel named herein through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, reporting, and expectations imposed by the Wyndham Defendant.

146. Upon information and belief, at all times relevant herein, Super 8 Location Defendants and each of them, were the apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible servants, servants, apparent ostensible staff, staff, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of the Wyndham Defendant and were acting as such within the course, scope and authority of said agency and employment, and that each of the Defendants as aforesaid, when acting as a principal or agent, was negligent, including but not limited to, in the hiring, training, retention, and supervision of each and every other Defendant as an agent, servant, employee, assistant, and consultant.

147. Wyndham Defendant obscures the full extent of control they exercise over their motel locations by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those polices and manuals.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

148. Upon information and belief, the standards that Wyndham Defendant imposed on Super 8 Location Defendants:

a. Did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools they used at their motel locations, including the Super 8 named herein;
b. Covered virtually all aspects of motel operations, including internal operating functions;
c. Dictated the specific manner in which Super 8 Location Defendants and its motel staff must carry out most day-to-day functions at their Super 8 location; and
d. Significantly exceeded what was necessary for Wyndham Defendant to protect its registered trademark.

149. Wyndham Defendant was in an agency relationship with the Super 8 Location Defendants. Upon information and belief, this agency relationship was created through Wyndham Defendant's exercise of an ongoing and systemic right of control over the Super 8 Location Defendants, including the means and methods of how Super 8 Location Defendants conducted daily business through one or more of the following:

a. Sharing profits;
b. Requiring Super 8 Location Defendants to use Wyndham's customer rewards program;
c. Hosting online bookings on Wyndham's developed, owned, and operated domain;
d. Regulating internet access for guests;
e. Setting employee wages;
f. Making decisions about employment and budgets, including for security and management;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

g. Advertising for management and local positions;

h. Standardized training and methods for Super 8 Location Defendant staff;

i. Standardized or strict rules of operation;

j. Oversight in hiring and/or terminating staff and managers;

k. Building and maintaining the subject motel property named herein;

l. Fixing prices; and/or

m. Creating advertising campaigns and unrealistic expectations of safety for guests.

150. Wyndham Defendant held the subject Super 8 location named herein out to the public as possessing authority to act on their behalf.

151. In addition to the ways described above, upon information and belief, Wyndham Defendant exercised and reserved the right to exercise systemic and pervasive control over the Super 8 Location Defendants' day-to-day operation at the subject Super 8 location named here in, including in the following ways:

a. Wyndham Defendant required Super 8 Location Defendants and management to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for Wyndham to protect their registered trademarks;

b. Wyndham Defendant provided training for hotel management and select hotel staff on-site at their motel locations selected by Wyndham;

c. Wyndham Defendant controlled training provided by Super 8 Location Defendants to motel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

d. Wyndham Defendant retained sole discretion to determine whether all training had been completed satisfactorily;

e. For certain products and services that Super 8 Location Defendants were required to purchase to operate the Super 8 location named herein, Wyndham designated approved vendors and prohibited the location from purchasing goods and services from anyone other than an approved vendor;

f. Wyndham set required staffing levels for the Super 8 location named herein;

g. Wyndham established detailed job descriptions for all positions and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

h. Wyndham set requirements for the hiring process used by the Super 8 location named herein and oversaw employee discipline processes and termination decisions;

i. Wyndham provided benefits for staff of the Super 8 Location Defendants;

j. Wyndham controlled channels for guests to report complaints or provide feedback regarding their motels and directly participated in the response and/or supervised the response to customer complaints or other feedback. Wyndham retained the right to provide refunds or other compensation to guests and to require Super 8 Location Defendants to pay associated costs;

k. Wyndham generated reports and analysis of guest complaints and online reviews for the subject Super 8 location named herein;

l. Wyndham set detailed requirements for insurance for the Super 8 Location Defendants and could bill them directly for that insurance if



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

Wyndham determined that they had not purchased adequate insurance;

m. Wyndham regularly audited the books and records of Super 8 Location Defendants;

n. Wyndham retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of any agreements if the Super 8 Location Defendants violated any of Wyndham's detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the Super 8 location named herein;

o. Wyndham conducted frequent and unscheduled inspections of the Super 8 Motel named herein;

p. Wyndham controlled all marketing for the subject Super 8 and prohibited them from maintaining any online presence unless specifically reviewed and approved by Wyndham;

q. Wyndham imposed detailed recordkeeping and reporting requirements on Super 8 Location Defendants regarding virtually all aspects of hotel operations;

r. Wyndham supervised and controlled day-to-day operations of the Super 8 location named herein through detailed information and extensive reports that it obtained through various methods and software systems they required Super 8 Location Defendants to use; and

s. Wyndham retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of motel operations.

**Wyndham Knowingly Benefited from Participation in a Venture with BJH Investments, LLC and Parijat Investments, LLC, and With Plaintiff's Non-Hotel-Employee Traffickers.**

152. Hotel brands, including Wyndham, own properties and lend their name and likeness



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

to third party owners while the building and operations are under the brands' supervision and control through brand standards, franchise agreements, inspections, reports, authority, and otherwise maintaining control over all aspects of operations. In return, the parent brand attempts to exchange the high risk that is inherent in owning an asset like a hotel property for the low risk associated with owning a local property or franchise contract and still profits from filling the rooms and its operations. As such, the hotel and parent brands—here BJH Investments, LLC and Parijat Investments, LLC defendants and Wyndham –are inextricably intertwined.

153. The average consumer does not see this contractual relationship and believes what is advertised—that the brand owns, operates, and is responsible for every part of the hotel. The parent brand gives the franchisee property its identity. It provides signage on and in front of the building that assures customers that if they check into that hotel, they can expect the standards consistent with the parent hotel brand. The parent/brand companies—here, Wyndham holds themselves out to the public as the owners of the properties. The same Wyndham brand inscribed on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk, advertise that the parent/brand owns and controls the hotel. The Wyndham brand also controls safety, safety training, crime response, its reputation, the property image, the brand image, the brand standards and rules, and the brand policies and procedures related to minimum safety standards. These brand requirements are contractual with the power to control weighed heavily towards the corporate parent brand.

154. At all times of trafficking alleged herein and currently, in addition to brand recognition, a marketing organization, the Wyndham brand provided the franchise Super 8 motel with access to its brand-wide central reservation system, 800 number, revenue management tools, world-class loyalty programs, point systems, information and data, and a website. Thus, booking and room reservations were controlled by the corporate parent



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

brand.[20] Here, Wyndham provided the Super 8 Location Defendants with the same and Wyndham controlled and had access to the subject bookings and room reservations.

155. Upon information and belief, at all times of trafficking alleged herein and currently, the Super 8 Location Defendants pay Wyndham a significant percent of their total revenue back and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement and other agreements.

156. Upon information and belief, per the franchise agreement, the parent brand, Wyndham, may enforce its standards through periodic and regular inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate. The right of the parent hotel brand, Wyndham, to enforce their brand standards, including safety standards, is also their responsibility. This was true before and at the time of all trafficking alleged herein.

157. At all times of trafficking alleged herein, Wyndham dictated franchisee and direct local property policies related to safety, security, human trafficking, employee training and Franchisee's response, as well as other subjects.

158. Upon information and belief, at all times of trafficking alleged herein, reservation information for rooms at the subject hotels passed through a system operated and managed by Wyndham and was advertised and facilitated by Wyndham.

159. Wyndham owns, operates, supervises, controls, and/or manages the brand and policies for bookings, rates, and operations, at the Super 8 located at 2070 Solano, Vallejo, California where Plaintiff JANE DOE was commercially sex trafficked for weeks and days at a time, repeatedly, at Wyndham's owned and operated location, from about 2011 through 2023. She was noticeably transported, harbored, and forced to be at these locations

[20] Meyer, Ellen. April 10, 2018. "The Origins and Growth of Franchising in the Hotel Industry." Lodging Magazine.
Available at: https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

under physical force and coercion, abused and threatened, while her body was sold and purchased for commercial sex acts.

160. Wyndham and Super 8 Location Defendants facilitated the sex trafficking of Plaintiff through its practices, policies, and procedures. Wyndham and Super 8 including the respective owners, managers, and agents, failed to take appropriate action to prevent the trafficking of individuals, including Plaintiff JANE DOE, for sex so that Wyndham and Super 8 Location Defendants could continue to profit from the room rentals and business that trafficking brings, including business from all over the state, country, and world.

161. Wyndham, and BJH Investments, LLC, and Parijat Investments, LLC owned and operated their respective properties, while buyers paraded in and out of rooms rented for the purpose of trafficking victims/survivors, including Plaintiff JANE DOE. Wyndham, BJH Investments, LLC, and Parijat Investments, LLC and their employees observed and should have observed the buyers parading in and out of its hotel rooms to engage in the sex trafficking of Plaintiff JANE DOE. Defendants Wyndham, and BJH Investments, LLC, and Parijat Investments, LLC's employees and agents observed and should have observed the trafficking occurring regularly and for multiple days at a time at the subject Super 8 with signs and sounds of abuse, a very young woman with older males that looked like they were in gangs, Plaintiff looking bruised and unhealthy, foot traffic in and out, drugs and Plaintiff looking drugged, and cash payments daily for multiple days. Defendants directly knew about the trafficking through its agents' and employees' relationship with Plaintiff JANE DOE's traffickers and many other traffickers that frequented the hotel.

162. Wyndham, and Super 8 Location Defendants all financially benefitted from renting hotel rooms to Plaintiff JANE DOE's non-employee trafficker on numerous occasions.

163. Wyndham, and Super 8 Location Defendants operated the subject Super 8 with knowledge that constant sex trafficking was occurring at the property and that non-employee sex traffickers frequented the property and chose to facilitate the trafficking by



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

allowing rule violations and not implementing policies regarding responding to and preventing sex trafficking. Defendants made exceptions for the traffickers and trafficking at these properties because the money derived from it was majority of their income.

164. Despite their actual and/or constructive knowledge that the venture Wyndham and Supper 8 Location Defendants were engaged in was in violation of 18 U.S.C. §§ 1591(a) and 1595(a) through the conduct of hotel staff and the widespread trafficking at the subject Super 8 , Defendant Wyndham participated in the venture by continuing to associate with the hotel staff and with each other to operate the hotel location named herein in a way that they knew or should have known would lead to further violations of 18 U.S.C. § 1591(a), including trafficking of Jane Doe and victims like her.

165. Defendant Wyndham financially benefitted from renting rooms to Jane Doe and her trafficker on numerous occasions.

166. Defendant Wyndham participated in this venture through the conduct described herein as they were jointly responsible for and/or had control over the specific hotel operations at the subject Super 8 motel.

**Wyndham Defendant and Super 8 Location Defendants' Knowledge of Sex Trafficking**

167. Super 8 Location Defendants and Wyndham Defendants have known, since well before Jane Doe was trafficked that sex trafficking was ongoing and widespread at their motel locations—specifically at the subject Super 8 Motel.

168. The subject Super 8 Motel, located at 2070 Solano Avenue, Vallejo, California was known as a sex trafficking hub for years before Jane Doe was trafficked there. The method of operation at the Super 8 Motel was consistent, deliberate, and observable to hotel staff and management throughout her trafficking.

169. Jane Doe was not only trafficked at this location between 2011 and 2023 but she was also trafficked here as a minor by a different trafficker and motel staff would have



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

recognized her there as an adult victim.

170. Rooms at the Super 8 Motel were registered in Jane Doe's name, her trafficker's name, or under various forms of identification depending on the circumstances.

171. Jane Doe's trafficker would take her identification when they were not checking in to the hotel. He kept control of her identification.

172. Trafficker would usually rent at least two rooms at the property simultaneously; one room in which Jane Doe and other victims would stay and one room from which the commercial sex acts took place.

173. Jane Doe's trafficker directed and controlled all of Jane Doe's activities and would either stay at the hotel with her and other victims or be very close by, keeping an eye on her.

174. Jane Doe and her trafficker would stay at the subject Super 8 Motel for days to weeks at a time, leave for a short period of time and then return for another stay.

175. Multiple unregistered male visitors arrived at and departed from Jane Doe's room in rapid succession at all hours of the day and night, in a pattern consistent with commercial sex buyer activity.

176. Jane Doe appeared physically injured, visibly distressed, malnourished, and under coercive control of a third party throughout her stays at the subject Super 8 motel named herein.

177. Controlled substances were present and observable at the property in connection with the trafficking operation. Jane Doe was forcibly injected with drugs by trafficker, and the visible signs of substance use and dependency were open and apparent to hotel staff, management and employees.

178. Jane Doe's trafficker carried a firearm at all times and would use it as a tool of intimidation and control while at the subject Super 8 Motel.

179. Hotel management and ownership were directly complicit in the trafficking



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

operation. Upon information and belief, the manager at the subject Super 8 personally solicited sexual acts from trafficking victims at the subject Super 8 property.

180. Hotel employees of the subject Super 8 motel provided discounts to known traffickers, including Jane Doe's trafficker, in exchange for sex with women being trafficked. Jane Doe's trafficker forced her to have sex with hotel employees in exchange for discounted room rates.

181. On one occasion, Jane Doe's trafficker physically assaulted Jane Doe in the hotel lobby as hotel management watched.

182. When Jane Doe attempted to use the phone at the front desk to seek help, she was denied access to the phone by hotel staff.

183. Jane Doe was trafficked alongside multiple women at this subject Super 8 motel. Additionally, other traffickers were operating out of the Super 8 Motel with additional victims. This created an observable pattern of commercial sex activity across multiple rooms at the subject property.

184. Upon information and belief, hotel staff and management were personally acquainted with Jane Doe's trafficker and recognized him as a repeat customer. They knowingly provided rooms to him with an awareness of the commercial sex activity.

185. On multiple occasions, hotel staff directly witnessed Jane Doe being physically assaulted by her trafficker at the hotel property. She was beaten, punched, and kicked while on the ground, she screamed for help and begged bystanders to call 911. No one at the hotel helped her.

186. Jane Doe's stays at the Super 8 Motel were extended. These stays were for anywhere between days, weeks or months at a time. The same commercial sex buyers would return repeatedly to the property as recognized and frequent patrons.

187. Wyndham has been named in numerous civil lawsuits arising out of sex trafficking at their properties, including during time of trafficking of Plaintiff JANE DOE in this case,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

which put Wyndham on further notice of what was going on.

188. Ultimately, at least several hundred traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of Wyndham branded properties owned and/or controlled by Wyndham and their franchisees in the recent past before and during the subject time period.

189. In 2011, a Change.org petition was published to address rampant gang-based sex trafficking in Wyndham hotels in California. The petition argued that from 2006 to 2011, members of the Crips gang in San Diego ran child sex trafficking rings of at least sixteen (16) girls out of various area hotels. Two subject properties on which many instances of child sex trafficking took place were a Howard Johnson in Escondido, California, and a Travelodge in San Diego, California, both owned by the Wyndham group.

190. Based on information and belief, before and at the time of the sex trafficking of Plaintiff JANE DOE, Defendants managed and monitored on-line reviews of their motel/hotel locations throughout the country that complain about prostitution and facts consistent with sex trafficking at their properties.

191. A sampling of news stories, reviews, and other public information available online establishes that, at the time Plaintiff JANE DOE was trafficked at the subject properties, the Defendants knew or should have known that:

a. there was widespread and ongoing sex trafficking occurring at Wyndham branded properties;
b. sex trafficking was a brand-wide problem for Wyndham;
c. Franchisees and hotel staff at Wyndham properties were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at their hotel properties and were facilitating sex trafficking and harboring trafficking at the branded hotel properties,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

including at and/or nearby the subject properties;

d. Wyndham's efforts, if any, to stop facilitating sex trafficking in their branded properties were not effective; and

e. Wyndham and their franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring and allowed to occur.

192. Despite this knowledge and mounting evidence that sex trafficking at its properties was ongoing and growing, Wyndham Defendants chose to earn revenue by continuing conduct that they knew or should have known would facilitate that trafficking. In fact, growth is the forefront of Wyndham's strategy as it continues to launch expansion plans and brag publicly about growth, with and without new parent companies. Wyndham Defendant failed to take responsibility and accountability for their wrongful actions and inaction in knowingly profiting from sex trafficking ventures around the country, including at the subject hotel where Plaintiff JANE DOE was trafficked. Defendants' failures led to and caused Plaintiff JANE DOE to be trafficked and the horrific injuries and lifelong permanent harm she suffered as a result.

**<u>Wyndham Defendants Facilitated the Trafficking of Plaintiff at the Subject Super 8 Location</u>**

193. Upon information and belief, during the times Plaintiff was trafficked at the subject Wyndham property named herein, Wyndham, Defendant participated directly in aspects of the operation of the subject Super 8 location that influenced whether and to what extent trafficking occurred at the hotel including but not limited to the following:

a. Wyndham Defendant assumed responsibility and control over the human trafficking response of their subject motel property, including design and implementation of practices to prevent trafficking, safety, and security procedures, employee, and franchisee education, training and response,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

partnership with external organizations, and advocacy;

b. Wyndham Defendant retained control over when its branded hotel would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity at their branded hotel location;

c. Wyndham Defendant retained control over determining which hotels needed additional training or other resources on the risk of trafficking occurring and other related criminal activity;

d. Wyndham Defendant retained control to terminate hotel staff and/or agreements based on the response to human trafficking;

e. Wyndham Defendant determined whether training is provided, when it is provided, the content of the training, how the training is delivered, who receives it, and the consequences of a motel location and/or it's employees not participating or failing to follow such training; and

f. Wyndham Defendant retained control over drafting, supervision, overseeing, and enforcement policies and procedures for housekeeping services, front desk services, operations and security at their branded motels, including how often rooms must be entered, how to respond to guest refusals of entry into rooms, how to view cameras, what actions to take to deter conduct and steps to monitor guest safety issues through housekeeping services, front desk staff, and operations and security.

194. Wyndham Defendant was aware of the fact that its cash and lax policies were promoting sex trafficking at the subject Super 8 location but chose not to implement safer parking policies, identification policies, guest policies, security policies, and human trafficking response rules. It even knowingly allowed violations of its rules to assist, facilitate, and support trafficking, which brought a constant income stream to the subject



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

motel and Wyndham Defendant.

195. As a direct and proximate result of these policies and practices on the part of Wyndham Defendant, Jane Doe and numerous other victims of sex trafficking and exploitation have been permanently injured and damaged physically, emotionally, psychologically, and financially. Wyndham Defendant, together with Super 8 Location Defendants, provided the venues to Jane Doe's trafficker and his associates, and aided and abetted his trafficking of her and other young girls. Wyndham Defendant has been displaying the same level of participation in the sex trafficking industry for decades.

**Super 8 Location Defendants Assisted, Supported, and Facilitated the Trafficking of Jane Doe for Sex**

196. Super 8 Location Defendants had both actual and constructive knowledge of the trafficking of Jane Doe at the hotel locations they owned and operated because the trafficking was the direct result of Super 8 Location Defendants facilitating the trafficking at the subject location.

197. Super 8 Location Defendants are responsible for the acts, omissions, and knowledge of all employees of the subject Super 8 location when operating the hotel because these acts and omissions were committed in the course and scope of employment. Super 8 Location Defendants ratified these acts and omissions because Super 8 Location Defendants failed to exercise reasonable care in the hiring, training, and supervision of these employees given the specific risks known and reported to the Super 8 Location Defendants of sex trafficking occurring at the subject hotel location.

198. Despite having actual and/or constructive knowledge of widespread and ongoing sex trafficking at their subject location, Super 8 Location Defendants continued renting rooms to these traffickers, including the rooms used to sexually exploit victims like Jane Doe.

199. Super 8 Location Defendant knew or were willfully blind to the fact that Jane Doe was being trafficked and, because of this, benefited from continued association with her



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

trafficker and his associates by providing a venue in the form of hotel rooms and related services to harbor and facilitate Jane Doe's sexual exploitation.

200. Super 8 Location Defendants also facilitated widespread trafficking at their motel location including the trafficking of Jane Doe in various ways including:

a. Allowing unreasonable, negligent and inadequate practices for hiring, training, supervising, managing, and disciplining front line staff and on-site staff regarding issues related to human trafficking;
b. Inadequate and inadequately enforced sex trafficking notice and training for motel staff;
c. Choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, laws, and/or applicable franchisor policies and procedures; and
d. Implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the motel staff and owners.

201. Hotel management and ownership were not only complicit in the trafficking but played a direct role in the trafficking by providing discounts to not only Jane Doe's trafficker but other traffickers who were trafficking other victims from this same location during the same time period.

**Plaintiff's Claims Against Defendants are Timely**

202. To the extent Defendants assert an affirmative defense under the TVPRA's ten-year statute of limitations for portions of Plaintiff's claims, Plaintiff asserts that her claims are timely under equitable doctrines including equitable tolling, the continuing violations doctrine, and delayed accrual principles.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

203. Plaintiff was held in captivity during her trafficking from 2011 to 2023.

204. Plaintiff finally escaped her trafficker in 2023. The statute of limitations did not begin to run until at least until her release at which point the ten-year time limit to file a claim was triggered.

205. Plaintiff escaped her trafficker only after giving birth to her son. Admission to a family shelter provided a rare opportunity to reach safety, and Plaintiff seized that opportunity in hopes of giving her child a better life.

206. However, since her escape in 2023, Plaintiff has remained in fear for her life, the safety of her son, and the possibility of being located and re-trafficked. Her trafficker has repeatedly found ways to contact her, even until now, including through telephone numbers and social media accounts she believed were unknown to him, and has threatened to blow up her home, her family's home, and kidnap her son. Plaintiff does not dismiss these threats; she knows firsthand the power, reach, and violence of her trafficker and his associates and the life-altering harm they are capable of inflicting.

207. The trauma of Plaintiff's years-long trafficking persisted long after her escape. She remained hypervigilant and fearful, often hearing her trafficker's voice in her head and constantly looking over her shoulder for him or his associates, who had monitored and controlled nearly every aspect of her life. Even today, Plaintiff struggles to trust others and remains acutely aware of her trafficker's extensive network and demonstrated ability to locate her.

208. Plaintiff knew that, for years after her escape, her trafficker was actively attempting to find her. His continuing efforts reinforced her belief that neither she nor her son were truly safe. Out of fear that her child could be taken from her, Plaintiff refuses to place him in daycare and remains cautious about revealing her whereabouts or daily routines.

209. After enduring twelve years of kidnapping, rape, sexual assault, physical abuse, coercion, and threats against herself and her family, Plaintiff remained under the shadow of her trafficker's control even after her escape in 2023. Her fear was well-founded: previous attempts to escape resulted in heightened surveillance, intimidation, and violence. Plaintiff reasonably believed that any public disclosure of her trafficking,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

including identifying the hotels involved and the conduct that occurred there, could expose her, her son, and her family to retaliation.

210. These circumstances, trauma and fear, which was grounded in the reality of the horror of Plaintiff's trafficking and ongoing risk to her and her family, prevented Plaintiff from filing suit for years after her escape.

211. Plaintiff's trafficker was arrested. She is still scared of his associates, but she finally felt empowered to file her lawsuit since she learned she could proceed anonymously. Her lawsuit is timely..

## CAUSE OF ACTION AGAINST ALL DEFENDANTS

### Sex Trafficking under 18 U.S.C. § 1595

1. **Cause of Action: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a) (all Defendants)**

212. Plaintiff JANE DOE realleges and incorporates the allegations in paragraphs 1 through 201.

213. Plaintiff JANE DOE is a victim of sex trafficking within the meaning of §1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

214. Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because they:

a. violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, it harbored individuals, including Plaintiff JANE DOE, knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at its respective hotel property; and

b. violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, it knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at its respective hotel properties.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

215. Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff JANE DOE to suffer substantial physical and psychological injuries and other damages as a direct and proximate result of being trafficked and sexually exploited at the Defendants' hotel properties.

**2. Beneficiary Liability under §1595 (a) of the TVPRA (all Defendants).**

216. Plaintiff JANE DOE realleges and incorporates the preceding allegations.

217. Plaintiff JANE DOE is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

218. Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and traffickers, including Plaintiff JANE DOE's traffickers, despite the fact that each defendant knew or should have known that these traffickers were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) at Defendants' properties, including the subject Motel 6 locations, and the Super 8 location alleged in this Complaint. As more specifically alleged above, Defendants took part in common undertakings and enterprises involving risk and potential profits, and here, actual profits resulted. Defendants' employees and agents had a direct association with the hotel employee traffickers and the non-hotel-employee traffickers, and knowingly facilitated the traffickers, which, as shown more thoroughly in the incorporated allegations above, showed a continuous business relationship between the traffickers and Defendants such that the pattern of conduct appears to be a tacit agreement between them. Thus, Defendants are liable as a beneficiary under 18 U.S.C §1595(a).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

219. Through the acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and/or the non-employee traffickers regarding the operations of its respective hotel properties even though each knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

220. Violations of 18 U.S.C §1595(a) by Defendants as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff JANE DOE to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

**3. Cause of Action: Vicarious Liability for TVPRA Violations (G6 Defendants, Wyndham).**

221. Plaintiff JANE DOE realleges and incorporates the preceding allegations.

222. Under the TVPRA and the federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture.

223. Under the TVPRA and the federal common law, an entity is vicariously liable for the acts and omissions of its alter-egos.

224. Motel 6 Location Defendants acted as the actual agents of G6 Defendants when operating its respective hotel properties and in committing the wrongful acts and inactions alleged herein.

225. Super 8 Location Defendants acted as the actual agents of Wyndham Defendants when operating its respective hotel property and in committing the wrongful acts and inactions alleged herein.

226. Through the wrongful acts and omissions described throughout this Complaint, G6 Defendants and Wyndham exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisees to operate its respective hotel properties.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

227. G6 Defendants and Wyndham are vicariously liable for the TVPRA violations of its franchisees, and the subagents of such franchisees.

228. Additionally, on information and belief, each of the G6 Defendants participated in a joint venture operating the subject Motel 6 locations and the Wyndham Defendant participated in a joint venture operating the subject Super 8 location. The Parent Hotel Defendants had highly integrated operations at their respective motels, shared revenue and profits generated from the motel, and exercised mutual control over the venture at the motel. They functioned as a single integrated entity and/or as alter-egos of one another and are therefore each directly and proximately liable for the harms and damages caused to Plaintiff JANE DOE as a result.

## JOINT AND SEVERAL LIABILITY

229. "Joint and several liability 'applies when there has been a judgment against multiple defendants.'"[21] If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff JANE DOE recover only once for the full amount.[22]

230. Federal law allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, without regard to his proportion of fault and even if the concurrent negligence of others contributed to the incident.[23]

231. Plaintiff JANE DOE alleges Defendants, and each of them, should be held jointly and severally liable to her for the totality of her injuries and damages alleged herein.

---

[21] *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994).

[22] See 735 ILCS 5/2-1117; see Restatement (Second) of Torts § 875 (1977); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

[23] *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) (citations omitted); *Manganiello v. City of New York*, No. 07 Civ. 3644, 2008 WL 2358922 (S.D.N.Y. June 10, 2008), affirmed, 612 F.3d 149 (2nd Cir. 2010).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

## DAMAGES

232. Defendants' wrongful acts and omissions described above, individually and collectively, proximately and legally caused Plaintiff JANE DOE to sustain legal damages.

233. Plaintiff JANE DOE did suffer the following injuries as a direct and proximate result of Defendants', and each of their, wrongful actions and inactions alleged herein, and as such Plaintiff JANE DOE is entitled to be compensated for past and future personal injuries, non-economic damages, and economic damages, see, e.g., 18 U.S.C. §§ 1593, 1595, including:

a. actual damages;
b. direct damages;
c. incidental and consequential damages;
d. lost earnings and lost earning capacity;
e. necessary medical expenses;
f. life care expenses;
g. physical pain and suffering;
h. physical impairment;
i. mental anguish and emotional distress damages (until trial and in the future);
j. restitution;
k. unjust enrichment;
l. disgorgement of profits; and
m. Plaintiff JANE DOE is entitled to pre- and post-judgment interest at the maximum legal rates.

## PUNITIVE DAMAGES

234. Plaintiff JANE DOE is entitled to punitive damages under the applicable statutes against Defendants, and each of them, for each and every cause of action alleged herein,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

as a result of Defendants' outrageous, wanton, willful, and malicious conduct underlying Plaintiff JANE DOE's claims. See *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).

**ATTORNEY FEES**

235. Plaintiff JANE DOE is entitled to recover her costs and reasonable, necessary, or customary attorneys' fees from Defendants under the applicable statutes. See 18 U.S.C. § 1595(a).

236. All conditions precedent to Plaintiff JANE DOE's recovery of its costs and attorneys' fees have occurred or will occur prior to entry of judgment in this suit.

**JURY DEMAND**

237. Plaintiff JANE DOE requests a jury trial in this action.

**PRAYER**

238. For these reasons, Plaintiff JANE DOE prays that this case be set for trial before a jury, and that upon a final hearing of the cause, judgment be entered for Plaintiff JANE DOE against Defendants jointly and severally, for:

a. all economic damages to which she is entitled;
b. all actual damages to which she is entitled;
c. all incidental and consequential damages to which she is entitled;
d. all mental anguish and emotional distress damages to which she is entitled;
e. all restitution damages to which she is entitled;
f. all disgorgement of profits to which she is entitled;
g. all unjust enrichment damages to which she is entitled;
h. exemplary, treble, and/or punitive damages;
i. attorneys' fees and costs of suit;
j. pre-judgment and post-judgment interest at the highest rate allowed by law; and



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

k. all other relief to which she is entitled in law or in equity.

SINGLETON SCHREIBER, LLP

Dated: July 9, 2026 By: /s/ Meagan Verschueren

Katie Llamas (CA 303983)
Meagan Verschueren (CA 31311)
Attorneys for Plaintiff



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

## CERTIFICATE OF SERVICE

I certify that on July 9, 2026, I electronically filed the foregoing document: **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJURIES**, and that it is available for viewing and downloading from the Court's CM/ECF system, that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on July 9, 2026, at San Diego, California.

/s/ Meagan Verschueren
Meagan Verschueren



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953